IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYNE V. WILLIAMS,      *

      Plaintiff      *

v.      *      Civil Action No. AW-12-cv-946

ISAIAS TESSEMA, et al,      *

      Defendants      *

***

**MEMORANDUM OPINION**

Pending is a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, filed on behalf of Defendants Tessema, Flury, Schindler, and Vickers. ECF No. 28. Plaintiff has responded. ECF Nos. 31, 32, 36, 38 & 47.[1] Defendants have replied. ECF No. 36. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the Motion, construed as a Motion for Summary Judgment will be GRANTED.

**Background**

Williams, a self-represented inmate housed at the Western Correctional Institution ("WCI"), initiated these proceedings alleging that he was denied adequate medical care. He states that in 2011 Defendant Greg Flury, P.A. prescribed a blister card of 400 mg tablets of Motrin. Plaintiff states that at that time he had been prescribed Hytrin by a prison doctor to treat

---

[1] Plaintiff's "Motion to Dismiss Defendants Summary Judgment on in the Alternative and Memorandum of Law" ECF No. 31, is denied; however the motion has been considered as an opposition to Defendants' dispositive motion. Plaintiff's "Motion to Amended to Plaintiff's Opposition in Response to the Defendants' Opposition for Summary Judgment" (ECF No. 47) is granted in that the additional materials and arguments have been considered by the Court as additional opposition to Defendants' dispositive motion.

Plaintiff has also filed a Motion for Leave to File an Amended Complaint. ECF No. 46. The Motion, filed seven months after Defendants' dispositive motion and unrelated to the events at issue in the instant case, shall be denied.

Plaintiff's prostate problems.  Plaintiff further states that in addition to prostate problems he has tested positive for Hepatitis C, and has been diagnosed with hypertension.  He states that after taking the Motrin he began to suffer abdominal and chest pain and an increased heart rate.  Plaintiff alleges that Defendant Flury intentionally interfered with Plaintiff's serious medical need for chronic care treatment by prescribing mediation which adversely interacted with other medication prescribed to him.  Plaintiff further alleges that the Motrin contributed to his urinating blood.  ECF No. 1.  Plaintiff also alleges that Flury prescribed Naproxen which should not have been prescribed along with Hytrin.  Plaintiff alleges that taking the two medications together caused him pain and rendered him unable to hold his urine.  ECF No. 19.

Plaintiff also alleges that on August 27, 2010, he was taken to Cumberland Medical Center and received stitches to his face and mouth after being in a serious altercation with an inmate while housed at the North Branch Correctional Institution.  The treating physician advised prison officials that Plaintiff should be brought back to the Medical Center to have his stitches removed one week later.  That same day, Plaintiff was taken to the WCI Medical Unit and was advised by Defendant Tessema that he would be taken to the Cumberland Medical Center in one week's time to have his stitches removed.  Plaintiff states that his stitches became infected because they were not promptly and properly removed as directed by the treating physician.  He states he was caused a lot of pain in his face and mouth due the "deprivation of care by doctor Tessema."   Plaintiff state that on September 25, 2010, Lisa Schindler, P.A. prescribed penicillin to treat the infection in Plaintiff's mouth.  Plaintiff states that the penicillin caused pain in his kidneys and liver and he urinated blood for three days.  Plaintiff alleges that

2

Schindler was deliberately indifferent to his serious medical needs in prescribing such a strong dose of Penicillin given that he suffers from Hepatitis C. ECF No. 1.

Plaintiff also claims that Lisa Schindler prescribed Actifed, which caused prostate pain. Plaintiff advised Schindler of the pain but she told him to keep taking the Actifed and that the pain would go away. Plaintiff alleges that the pain in his prostate constituted a disregard for a substantial risk of harm to him. *Id.*

By way of amended complaint, Plaintiff alleges that he advised Leon Vickers in several written request that he was having problems with his "C.V.S. Medical Diet" which was being prepared by dietary staff with a lot of sugary products. He states that the meals were not sufficiently nutritious for someone suffering from Hepatitis C. He also alleges that there was too much salt in his food which caused his blood pressure "to be up most of the time" and Vickers failed to respond to Plaintiff's concerns. ECF No. 19.

Medical Records

A. Ibuprofen and Naprosyn[2]

The uncontroverted medical records demonstrate that ibuprofen was prescribed by P.A. Flury on April 15, 2011, in response to Plaintiff's complaint of chronic joint pain lasting approximately two months. ECF No. 28, Ex. 1, p. 133. Plaintiff was next seen on May 5, 2011 by Dennis Martin, R.N. Plaintiff did not complain of any of the symptoms he alleges in this complaint were caused by taking ibuprofen and Hytrin. Rather, he continued to complain of joint pain and was instructed to continue taking the ibuprofen. *Id.,* p. 131. Plaintiff was again

---

[2] Naproxen is a non-steroid anti-inflammatory drug indicated for relief of signs and symptoms of rheumatoid arthritis (RA), osteoarthritis (OA), ankylosing spondylitis (AS), and juvenile arthritis (JA).(Naprosyn/Anaprox/Anaprox DS) IT also provides relief of signs and symptoms of tendonitis, bursitis, and acute gout, and aids in the management of pain and primary dysmenorrhea. It is also prescribed as "Naprosyn." ECF No. 36.

evaluated on May 12, 2011 and July 20, 2011. At no time did he offer any complaint or demonstrate any of the symptoms alleged in the Complaint. *Id*. p. 105-110.

Plaintiff was again prescribed ibuprofen on January 28, 2012, after he requested same. *Id*., p. 148. Plaintiff did not file any sick calls slips for abdominal, chest, kidney or liver pain, or increased heart rate after the ibuprofen was prescribed. The prescription was for 14 days and was not renewed. *Id*., p. 149-50.

After complaining of a fall in his cell, Plaintiff was prescribed Naprosyn on May 16, 2012. *Id*., p. 183-84. He requested a refill of the prescription on June 2, 2012, due to thumb and rib pain. *Id*., p. 19. The refill was ordered on June 4, 2012. On June 17, 2012, Plaintiff submitted a sick call slip complaining of pain. *Id*., p. 18. He was seen on June 20, 2012, and requested "something like Naprosyn to help it." The medication was prescribed as requested. *Id*. He was again prescribed Naprosyn on July 14, 2012, in response to his complaints of chronic joint pain. *Id*., p. 197. On July 20 and 24, 2012, Plaintiff claimed no side effects from Naprosyn. *Id*., p. 017, 209, 196-98. Flury noted that Plaintiff "related chronic hand pain" and that he had "taken naproxen in the past with beneficial results and denied med side effects." ECF No. 28, Ex., 1, p. 197.

On August 6 and 8, 2012, Plaintiff submitted sick call slips complaining of abdominal and chest pain which he attributed to Naprosyn. *Id*,. p. 14-15, On August 14, 2012, Flury attempted to evaluate Plaintiff in response to his complaints of side effects; however, correctional staff advised Flury that Plaintiff refused to be evaluated. *Id*., p. 200. Medical records note that despite being counseled not to take the drug daily, Plaintiff was doing so. Flury therefore discontinued the prescription. *Id*. After the Naprosyn was discontinued Flury

prescribed Plaintiff Tylenol. ECF No. 31, p. 4; see ECF No. 28, Ex. 1, p. 206. Plaintiff believes that Tylenol should have been prescribed to treat his joint pain, rather than Motrin or Naprosyn. *Id*. He also claims that he did not continue to take the ibuprofen or Naprosyn once he developed symptoms. ECF No. 38.

No drug interactions are listed on the PDR website between Hytrin[3] (Terazosin) and ibuprofen and naproxen. ECF No. 36, Ex. A. Plaintiff has provided a copy of a page from an undated book entitled "PDR Family Guide to Prescription Drugs," which states in relevant part: "If Hytrin is taken with certain other drugs, the effects of either could be increased, decreased or altered. It is especially important to check with your doctor before combining Hytrin with the following: Nonsteroidal anti-inflammatory painkillers such as Motrin and Naprosyn." ECF No. 38, Ex. 54. Notably, the book does not indicate that the combination of Hytrin and Motrin or Naprosyn causes any of the symptoms Plaintiff describes.

    B.    Stitch Removal and Antibiotics

Plaintiff was injured on August 27, 2010, in an altercation with another inmate. ECF No. 28, Ex., 1, p. 279. He was sent to the hospital where he received stitches. *Id*., p. 276. Some sutures were removed by Dr. Ottey on September 4, 2010, but Plaintiff refused to have all sutures removed as it was too painful. *Id*., p. 215. P.A. Schindler attempted to remove the remaining sutures on September 9, 2010. *Id*., p. 204. At that time, Plaintiff requested to have the scab fall off first and asked to soak the area gradually to facilitate stitch removal. *Id*., p. 204. Schindler observed drainage and odor, was concerned that Plaintiff had developed an infection,

---

[3] An alpha-blocker used to treat hypertension.

and prescribed antibiotics. *Id*., p. 204. Plaintiff indicated he would submit a sick call slip when he was ready to have the stitches removed. *Id*.

On September 19, 2010, Plaintiff was seen in the chronic care clinic by Dr. Majid Arnaout for treatment of hepatitis C and an enlarged prostate. Plaintiff did not offer any complaints regarding taking the antibiotics prescribed for his mouth infection, and did not complain of pain in his kidneys and liver or urinating blood.[4] *Id*., p. 200-203.

Plaintiff was seen again by P.A. Schindler on September 24, 2011. *Id*., p. 193-94. She could not remove the stitches as she did not have the proper kit. She did note that the stitches needed to be removed as soon as possible as the scabs had fallen off. She noted her concern about infection. The following day, five sutures were removed by Autumn Durst. R.N. Plaintiff resisted having any more sutures removed and requested "more time to heal." *Id*., p. 192-94. Durst advised Plaintiff of the necessity of removing the sutures but Plaintiff told Durst that the sutures "are all out now" and refused to allow Durst to "visualize the inside of his mouth." *Id*. Durst advised Schindler that she believed there were additional sutures in Plaintiff's mouth but he refused to have them removed. *Id*. p. 192.

On September 28, 2010, Plaintiff was again seen by Schindler, who again did not have the suture removal kit. *Id*., p. 186-88. Plaintiff requested that dental personnel remove the stitches. Schindler advised Plaintiff that she would remove what she could and refer him to dental if necessary. *Id*., p. 186-88. On October 1, 2010, the final three sutures were removed by Schindler. *Id.,* p. 185.

    C.    Actifed

---

[4] Contrary to Plaintiff's assertions, Dr. Tessema did not evaluate Plaintiff regarding the injuries to his mouth, removal of stitches, or prescription of antibiotics. *Id.,* p. 185-279.

On June 4, 2010, Schindler prescribed Plaintiff Actifed, an aprodine,[5] in response to his complaints of allergies. *Id*., p. 287-88. There is no record that Plaintiff suffered any of the alleged issues he complains of as a result of taking Actifed. Specifically, there is no record that Plaintiff was seen by Schindler for complaints of prostate pain. Plaintiff was seen on July 18, 2010, due to his involvement in an altercation, and again on August 3, 2010, by Dr. Arnaout in the chronic case clinic, and at each encounter offered no complaints regarding prostate pain. *Id*., p. 282-285. The August 3 notes specifically reflect "no dysuria or hematuria." *Id*.

E. Preparation of meals

Leon Vickers' avers that he does not oversee the preparation of food served to inmates and has no control over meeting the dietary needs of inmates. *Id*., Ex. 2.

**Standard of Review**

A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan*

---

[5] An antihistamine and decongestant.

*v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In reviewing the complaint in light of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Id*. 570.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556

U.S.662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

B.  Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

In order to state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a

serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer,* 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown,* 240 F. 3d at 390; citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff's allegation that he was not provided necessary medical treatment and/or provided inappropriate medical treatment is belied by the record. The evidence before the Court demonstrates that Plaintiff has received constitutionally adequate medical care. Plaintiff has

been evaluated regularly regarding his pain. To control Plaintiff's joint pain he was prescribed various analgesic medications, including ibuprofen, Naprosyn and Tylenol. Assuming Plaintiff suffered side-effects by taking ibuprofen and Naprosyn, nothing suggests that Defendants should not have prescribed the analgesics because of other medication Plaintiff was taking. There is no medical evidence that ibuprofen or Naprosyn are contraindicated for a patient taking Hytrin. Similarly, assuming Actifed caused Plaintiff prostate pain as he alleges, there is nothing in the record to suggest that Defendants were deliberately indifferent in prescribing it. There was no contraindication for the prescription of the medication. Moreover, Plaintiff has indicated that once he developed side-effects he stopped taking the prescribed medication. Defendants cannot be said to be deliberately indifferent to side effects of which they were unaware, or which were not known to be contraindicated for those suffering from Plaintiff's medical conditions.

As to Plaintiff's complaints regarding removal of the stitches, again, the record demonstrates Plaintiff received constitutionally adequate medical care. Plaintiff requested and/or caused several delays in the removal of all of the sutures. Additionally, he was provided antibiotics to treat and/or prevent infection. Medical staff were attentive to the need to remove the stitches but were thwarted by Plaintiff.

Lastly, Plaintiff's claim as to Vickers is simply misplaced. Vickers has no authority over the preparation of meals provided to inmates.

Plaintiff's disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d

841, 849(4th Cir.1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances in this case. Plaintiff has been evaluated repeatedly and provided appropriate tests, therapies, and analgesic medication. Even if true - which it is not -- the allegation that the Medical Defendants provided inappropriate treatment states nothing more than a claim of medical malpractice and negligence.[6] "[A]n inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

## Conclusion

For the aforementioned reasons, Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted. A separate Order follows.

May 28, 2013 /s/
Alexander Williams, Jr.
United States District Judge

---

[6] Under Maryland law, a claim of medical malpractice could proceed only after complete review before the Maryland Health Claims Arbitration Board. *See* Md. Code Ann., Cts & Jud. Proc., §3-2A-01 *et seq*.; *see also Davison v. Sinai Hospital of Balt. Inc*, 462 F.Supp. 778, 779-81 (D. Md. 1978); *Group Health Ass'n, Inc. v. Blumenthal*, 295 Md. 104, 114 (1983). There is no demonstration that Plaintiff has sought or completed such review. This Court declines jurisdiction over these state court claims, and dismisses them without prejudice. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).